UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SONIX TECHNOLOGY CO. LTD,<br><br>Plaintiff,<br><br>v.<br><br>KENJI YOSHIDA and GRID IP, PTE., LTD.,<br><br>Defendant. | Case No.:  12cv380-CAB-DHB<br><br>**ORDER GRANTING MOTION FOR DETERMINATION OF EXCEPTIONAL CASE [Doc. No. 330]** |

On January 25, 2016, Plaintiff Sonix Technology Co. LTD ("Sonix") filed a motion for determination of exceptional case and award of attorneys' fees.  [Doc. No. 330.]  On February 22, 2016 Defendants Kenji Yoshida and Grid IP PTE. LTD ("Yoshida") filed an opposition to the motion.  [Doc. No. 337.]  On February 2, 2016, Sonix filed a reply to the opposition.  [Doc. No. 340.]  For the reasons set forth below, the motion is GRANTED.

BACKGROUND

This is a patent infringement action involving four patents:  U.S. Patent Nos. 8,031,375 (the "'375 Patent"); 7,967,217 (the "'217 Patent"); 8,253,982 (the "'982 Patent"); and 8,430,328 (the "'328 Patent").  Kenji Yoshida publicly accused an optical identification technology produced by Sonix, known as OID2, of infringing the '375

patent.  In response to those accusations, Sonix brought a complaint for declaratory judgment of non-infringement and invalidity.  Kenji Yoshida, joined by Grid IP, then filed counterclaims for direct and indirect infringement of the '375 patent, and the '217, the '982 and the '382 patents against the OID2 product.  Sonix then amended its declaratory judgment complaint to include all four asserted patents and added claims of unenforceability.

The Court entered summary judgment of non-infringement in favor of Sonix on the '375, the '217 and the '382 patents, and dismissed without prejudice Sonix's corresponding affirmative defenses and declaratory judgment counterclaims of invalidity and unenforceability as to those patents.  Finding a genuine dispute with regard to infringement of the '982 patent, the motion was denied as to that claim.

On May 15, 2015, Sonix moved for summary judgment of invalidity with respect to the two remaining claims of the '982 patent. [Doc. No. 253.] Shortly thereafter, Yoshida filed a motion to dismiss based on its assertion that the Court lacked subject matter jurisdiction over Sonix's declaratory relief claims based on allegedly "de minimis" sales of the accused products. [Doc. No. 268.] The Court denied Yoshida's motion and, due to Yoshida's admission that it cannot establish the allegations of indirect infringement against Sonix, simultaneously ordered judgment in favor of Sonix against Yoshida on *all* of its indirect infringement counterclaims. [Doc. No. 297.]

At this point, the remaining issues for trial were Yoshida's counterclaim of direct infringement of the '982 patent and Sonix's corresponding affirmative defenses and declaratory judgment claims of non-infringement, invalidity and unenforceability as to that patent.  Sonix also had the motion for summary judgment of invalidity of the '982 patent under submission.

On November 18, 2015, Yoshida sent a "Covenant Not to Sue" to Sonix on the remaining '982 patent, as well as the other three patents already adjudicated in Sonix's favor.  The next day, Yoshida filed a motion to dismiss, attaching the Covenant and affirmatively representing that it no longer seeks to pursue its infringement allegations

against Sonix.  The Court granted the motion and dismissed with prejudice Yoshida's counterclaim for direct infringement of the '982 patent as well as Sonix's declaratory judgment claim of non-infringement, invalidity and unenforceability of the '982 patent. Judgment was entered in favor of Sonix as to Yoshida's claims of direct and indirect infringement of the '375 patent, the '217 patent and the '328 patent, and the claim of indirect infringement of the '982 patent.  Judgment was also entered in favor of Sonix on its counterclaim of non-infringement of the 375 patent, the '217 patent and the '328 patent.  Costs were also awarded to Sonix as the prevailing party on those claims. Finally, costs were awarded to Sonix as a condition of dismissal of Yoshida's remaining claim of direct infringement of the '982 patent.  Sonix then filed this motion for a determination of exceptional case pursuant to 35 U.S.C. §285.

DISCUSSION

A.  Legal Standard.

Congress has provided, in 35 U.S.C. § 285, that in patent infringement disputes "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."[1] "As the statutory language suggests, the award of attorneys' fees is discretionary, and a district court may decide not to award fees even in an exceptional case." *Kilopass Tech., Inc. v. Sidense Corp.*, 82 F. Supp. 3d 1154, 1165 (N.D. Cal. 2015) (citing *Modine Mfg. Co. v. Allen Group, Inc.*, 917 F.2d 538, 543 (Fed. Cir. 1990)) ("The decision whether or not to award fees is still committed to the discretion of the trial judge, and even an exceptional case does not require in all circumstances the award of attorney fees.").

---

[1] Sonix is clearly the prevailing party, as the Court granted Sonix's motion for summary judgment for non-infringement as to three of the four Asserted Patents [Doc. No. 216], and Yoshida provided Sonix with an unconditional covenant-not-to-sue as to all four Asserted Patents [Doc. No. 316-3].  *See Highway Equip. Co. v. FECO Ltd.,* 469 F.3d 1027, 1035-36 (Fed. Cir. 2006)(holding recipient of covenant-not-to-sue was "prevailing party").

1    The Supreme Court has recently considered the scope of § 285. In *Octane Fitness,*

2  *LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014), it rejected the Federal

3  Circuit's rule that a case was only "exceptional" under the meaning of § 285 "when there

4  has been some material inappropriate conduct related to the matter in litigation" or when

5  "(1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively

6  baseless," *see Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc.*, 393 F.3d 1378, 1381

7  (Fed. Cir. 2005). Noting that this formulation was "overly rigid," the Supreme Court

8  instead held that "an 'exceptional' case is simply one that stands out from others with

9  respect to the substantive strength of a party's litigating position (considering both the

10  governing law and the facts of the case) or the unreasonable manner in which the case

11  was litigated." *Octane Fitness*, 134 S. Ct. at 1756. The Court also confirmed that

12  "[d]istrict courts may determine whether a case is 'exceptional' in the case-by-case

13  exercise of their discretion, considering the totality of the circumstances." *Id.* In that

14  exercise, courts may consider such factors as "frivolousness, motivation, objective

15  unreasonableness (both in the factual and legal components of the case) and the need in

16  particular circumstances to advance considerations of compensation and deterrence." *Id.*

17  at 1756 n.6.

18    B.  Analysis.

19    After reviewing the totality of the circumstances, this Court concludes that this

20  case is exceptional and warrants the award of attorneys' fees to Sonix.  While the

21  individual factors are addressed below, what has become apparent is that Yoshida's

22  counsel, Westerman, Hattori, Daniels and Adrian, LLP ("WHDA"), yielded complete

23  control over the litigation, as well as the prosecution of the U.S. patents, to its client,

24  Yoshida.  As a result, WHDA abrogated its duty to undertake independent pre-filing

25  infringement investigation, and asserted positions in the litigation that were vague,

26  confusing and contradictory.  In order to "advance considerations of compensation and

27  deterrence" (*id.*), and discourage lawyers from abrogating their independent duties of

28  investigation, an award of fees is justified.

1

2      1.   Substantive Strength.

3      Sonix makes two arguments as to Yoshida's substantive litigation positions.  First,

4 it argues that Yoshida pressed baseless, confusing claim construction positions.  Second,

5 Sonix argues that Yoshida maintained baseless infringement contentions.

6      a.   Claim Construction Positions.

7      Sonix argues that Yoshida pressed claim constructions that were vague and

8 confusing, mixed citations among the different asserted patents in attempting to use

9 intrinsic evidence from later, unrelated patents to support constructions in earlier patents,

10 and ignored the few instances where the specification provided express definitions of

11 claim terms.  Yoshida argues that the proposed claim constructions were informed by the

12 claim language, the specification, the prosecution history, and the understanding of the

13 person having ordinary skill in the art.

14      The Court agrees with Sonix that the language used in the Asserted Patents and

15 claims is very confusing and inconsistent.  This may be due to the fact that three of the

16 patents that were prosecuted by WHDA were received for filing by WHDA as English

17 translations of the Japanese priority applications.  [Doc. No. 337-1, Daniels Decl. ¶ 23.]

18 The Court noted during the hearings for claim construction and summary judgment that

19 the grammar and syntax of the patent specifications was difficult to follow, and at times

20 the text was in direct conflict with the drawings.  WHDA acknowledges it had no hand in

21 the preparation of the text of those applications.  *Id.*

22      WHDA also had no hand in the pre-filing investigation, leaving all of that

23 investigation to the client. [Doc. No. 337 at 12-13.]   As a result of its failure to conduct

24 any independent analysis of the patent applications or undertake any independent pre-

25 filing investigation, WHDA ultimately pressed claim constructions that were not only

26 unsuccessful, but also vague, confusing and contradictory.  Such behavior weighs in

27 favor of exceptional status.

28

b.  Infringement Contentions.

As Sonix also points out, after Yoshida lost all of its proposed claim constructions, Yoshida submitted final infringement contentions with regard to the '375 and '928 patents that failed to account for any of the Court's claim construction rulings.  [Doc. No. 330-1 at 13-14.]  And, with regard to the '982 and '217 patents, Yoshida offered two alternative, inconsistent infringement theories for the same patent claims.  *Id.*  This is again evidence of lawyers taking blind direction from the client, and weighs in favor of exceptional status.  *See Cambian Sci. Corp. v. Cox Comm'ns. Inc.,* 79 F.Supp.3d 1111, 1114-16 (C.D. Cal. Jan. 6, 2015)(case can be exceptional where party fails to take a claim construction defeat into account and amend their contentions accordingly).

In addition, the Court granted summary judgment in favor of Sonix as to three of the Asserted Patents.  [Doc. No. 216.]  Most notably, at the hearing, in the face of Sonix's motion, Yoshida simply abandoned its claims of infringement of the '375 patent, the patent Yoshida publicly asserted against Sonix's products that launched this litigation.  Summary judgment was granted on the '217 and '382 based on Yoshida's own final infringement contentions.  While one patent, the '982 patent, survived summary judgment, the fact that Yoshida's own final infringement contentions established non-infringement as a matter of law as to two of the then remaining three patents reflects a fundamental weakness in Yoshida's substantive legal position that warrants an exceptional finding.

2.  Litigation Conduct.

Sonix argues that Yoshida's litigation conduct "has also been far outside the norm" [Doc. No. 330-1 at 17] in three ways.  First, Yoshida failed to undertake necessary pre-filing investigation.  Second, Yoshida failed to undertake reasonable post-filing infringement analysis.  Third, Yoshida failed to seek and obtain discovery regarding product sales.

a.   Lack of reasonable pre-filing investigation

Sonix argues that Yoshida filed counterclaims alleging infringement of four patents without doing the necessary pre-filing investigation, either by access to source code or reverse engineering the accused product.  [Doc. No. 330-1 at 18.]  In opposing this argument, WHDA concedes that it relied solely on its own client's analysis, without any independent pre-filing infringement analysis by the WHDA attorneys.  [Doc. No. 337 at 12-13.]  Before filing a patent infringement claim, patent litigation counsel has an independent duty to conduct a reasonable pre-filing investigation, including claim construction and application of the claims to the accused products.  *See Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1300-01 (Fed. Cir. 2004);  *View Eng'g, Inc. v. Robotic Vision Sys., Inc.*, 208 F.3d. 981, 984-86 (Fed. Cir. 2000).  "Although an attorney is allowed to consult his client when he engages in such claim construction, he may 'not rely solely on the client's claim interpretation, but instead perform an independent claim analysis.'"  *Safe-Strap Co., Inc. v. Koala Corp.*, 270 F.Supp.2d 407, 411 (S.D. N.Y. 2003)(quoting *Antonious v. Spalding & Evenflo Co., Inc.*, 275 F.3d 1066, 1072 (Fed. Cir. 2002)).  Here, WHDA concedes that it delegated all pre-filing investigation to Dr. Yoshida, a man who testified that he does not speak or read English [Doc. No. 346 at 9-10], is not a patent expert [Doc. No. 346 at 14, ll. 9-12], and cannot read or understand the asserted claims [Doc. No. 346 at 31, ll. 6-11].  This lack of pre-filing investigation by counsel supports an exceptional finding.

As for Yoshida's pre-filing investigation, Yoshida argues that he did not need access to the source code to determine infringement, and was able to make that determination by visual inspection of the Accused Products.  Assuming such a manual inspection of "virtual" points and lines was adequate, it then begs the question of why Yoshida sought the source code in discovery (which is a costly proposition) if such material was unnecessary for an infringement analysis.  Yoshida's counsel claim they sought Sonix's source code through discovery out of their concern that Sonix "might present expert testimony, putting a spin on the source code that would suggest non-

7

infringement." [Doc. No. 337-1, Daniels Decl. ¶20.] This explanation then begs the question of why the source code was never examined by Yoshida's experts to prepare for such a concern. Yoshida's circular logic about the necessity of source code is simply further evidence that Yoshida failed to conduct the necessary pre-filing investigation.

   b. Lack of reasonable post-filing infringement analysis.

Sonix also argues that Yoshida failed to conduct reasonable post-filing infringement analysis because, once Yoshida obtained Sonix' source code, it never looked at it. [Doc. No. 340 at 7-10.] As Sonix points out, the claims of the Yoshida patents asserted in this case include requirements such as "virtual" points and lines that can only be evaluated by examining the source code used by the accused products.[2] Not only did Yoshida lack access to the underlying source code when he allegedly performed his pre-filing analysis, Yoshida's experts also completely ignored Sonix's source code when produced in this action for defendants' infringement analysis. This lack of reasonable post-filing infringement analysis also supports an exceptional finding.

   c. Failure to seek and obtain discovery regarding product sales.

Sonix also argues that Yoshida failed to seek and obtain discovery regarding product sales, thus leading to protracted litigation. In June 2016, Yoshida's counsel brought a motion to dismiss, claiming that they had recently determined that the case had only "nuisance value" due to "de minimis" sales of the accused products in the U.S. [Doc. No. 270 at 19-20.] However, as Sonix points out, Yoshida is an experienced international businessperson in the specific field of dot pattern technology. If Yoshida

---

[2] Yoshida counters that Sonix took a contrary position in a different litigation involving the same dot pattern technology. [Doc. No. 337 at 6-9.] However, Sonix's filings from a different case involving a different patent with different claims relating to a different dot pattern technology against it are simply irrelevant to this case. *See Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1137 (Fed. Cir. 1985)(each claim of a patent is considered to be a complete and independent invention). Yoshida also argues that this Court did not rely on source code in its claim construction or summary judgment orders. By the same token, Yoshida did not deem it necessary to provide source code in support of its claim construction or summary judgment positions. Therefore, these arguments are unpersuasive.

was unsure about whether the potential damages in the case warranted the litigation, then he **and his counsel WHDA** had an affirmative duty to pursue damages evidence promptly.  Nevertheless, despite having ample evidence of significant worldwide sales [Doc. No. 330-2, Wu Decl. ¶¶ 12 & 13], Yoshida did very little to pursue third party data regarding U.S. sales [Doc. No. 330-2, Wu Decl. ¶10, Ex. 6 & 7] .  At some point, after several summary judgment defeats and a desire to end the litigation, Yoshida simply took the position that U.S. sales were de minimis, without pursuing third party discovery to confirm actual U.S. sales.  This also supports an exceptional finding.

CONCLUSION

For the reasons set forth above, Sonix's motion for determination of exceptional case and award of attorneys' fees pursuant to 35 U.S.C. §285 is **GRANTED**.  While each individual action by Yoshida may not have been "exceptionally" unreasonable, the totality of the circumstances of the present action, coupled with the admitted failure by WHDA to undertake independent pre-filing investigation, amount to an "exceptional case" that justifies an award of fees.

/////
/////
/////
/////
/////
/////
/////
/////
/////
/////
/////

Pursuant to the Court's order of January 5, 2016 [Doc. No. 324], the parties are **HEREBY ORDERED** to meet and confer, no later than **June 24, 2016**, with regard to the determination of the reasonable amount of attorneys' fees sought by Sonix. If the parties are unable to agree on an amount, then Sonix shall file a motion for attorneys' fees (incurred prior to November 18, 2015) no later than **July 1, 2016**. Opposition shall be filed by **July 15, 2016**. Reply to the opposition shall be filed by **July 22, 2016**. The matter will then be under submission and an order will issue in due course.

**IT IS SO ORDERED.**

Dated:  May 23, 2016

_____
Hon. Cathy Ann Bencivengo
United States District Judge

12cv380-CAB-DHB